IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| RICKY MCFADDEN and | ) | |
|---|---|---|
| JACQUELYN SUMMERS, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 11 C 7555 |
| v. | ) | Hon. George W. Lindberg |
| | ) | |
| CHICAGO PUBLIC SCHOOLS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Ricky McFadden ("McFadden") and Jacquelyn Summers ("Summers") (collectively "plaintiffs") filed an amended complaint ("complaint") against various defendants, including eight individual members of the North Grand High School Local School Counsel ("LSC") in their official capacity as LSC members, alleging a violation of their equal protection rights under the Fifth and Fourteenth Amendments of the Constitution pursuant to 42 U.S.C. § 1983 (Count I); race discrimination in violation of 42 U.S.C. § 1981 (Count II); and race discrimination in violation of Title VII (Count III). According to plaintiffs, individual LSC members Emily Ocasio, Lenette Pedraza, Lucy Roman, Jesus Vega, Victor Nunez, Wendy Perez, Mercedes Felis Matos, and Jeanette Albarran (collectively "LSC defendants") are defendants solely as to Counts I and II of the complaint. The LSC defendants have moved to dismiss the two counts against them pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). The LSC defendants argue that as volunteer members of the LSC, they cannot be held liable for damages arising from the day to day staffing and operations of the school. For the reasons set forth more fully below, the LSC defendants' motion to dismiss is granted. Counts I and II of the complaint are dismissed as to the individual LSC members.

*I. Relevant Facts*

Both plaintiffs, who are African-American, served as classroom assistants at North Grand High School ("North Grand") until their terminations on August 31, 2010. Plaintiffs claim that they were terminated by North Grand Principal, Asuncion Ayala ("Ayala"), because they were African-American and not Hispanic. They also claim that while employed at North Grand, they were treated less favorably than Hispanic coworkers. Specifically, plaintiffs claim that because of their race, they were unfairly denied summer employment positions and after-school employment assignments, and that they were held to less favorable work schedules and work conditions than Hispanic coworkers.

In the complaint, plaintiffs attempt to hold the individual LSC members responsible for the allegedly discriminatory conduct of Principal Ayala by alleging that "[Chicago Public Schools], through the Chicago Board of Education, authorized the [LSC] to oversee, enforce, and be a final policy maker over matters regarding teacher and staff employment at North Grand." *Compl*. at ¶67. Plaintiffs further allege that the "Chicago Board of Education has the invariable custom and practice of vesting and delegating decisional authority in [LSC] and principals to make renewal and reclassification decisions as to Special Education Classroom Assistants." *Id*. at ¶68. According to plaintiffs, "[t]he [LSC] allowed Ayala to exclusively be the sole decision maker as to employment policies at North Grand High School because it shared her discriminatory vision that 'North Grand is or should be a Hispanic school.'" *Compl*. at ¶86.

*II. Legal Analysis*

In ruling on a Rule 12(b)(6) motion to dismiss, the court treats all well-pleaded allegations as true, and draws all reasonable factual inferences in plaintiffs' favor. *Justice v.*

*Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009). Under Rule 8(a), the complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." The factual allegations must be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.E.2d 929 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 929 (2009).

Because plaintiffs have alleged intentional discrimination, the same standards govern liability under both §1983 and §1981. *Friedel v. City of Madison*, 832 F.2d 965, 971 (7th Cir. 1987). In order to state valid discrimination claims, plaintiffs must allege that they were victims of intentional discrimination. *Id.* at 972. Notably, individual defendants sued in their official capacities, such as the individual LSC members in this case, can only be held liable for intentional discrimination if they had "final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Horwitz v. Bd. of Ed. of Avoca School Dist. No. 37*, 260 F.3d 602, 619 (7th Cir. 2001) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Accordingly, this Court must determine whether the LSC and its members spoke with "final policymaking authority" as to the alleged discrimination. "Deciding whether a specific official has final policymaking authority is a question of state law." *Horwitz*, 260 F.3d at 619.

The Illinois School Code provides that "[t]he right to employ, discharge, and layoff shall be vested solely with the board . . ." 105 ILCS 5/34-8.1. Further school principals are tasked with "the authority (i) to direct, supervise, evaluate, and suspend with or without pay or otherwise

3

discipline all teachers, assistant principals, and other employees." *Id*.

The duties and powers of the LSC are enumerated in the Illinois School Code. 105 ILCS 5/34-1 *et seq*. "In Illinois, the School District's Board of Education has full power to manage the schools and to adopt all rules and regulations needed for that broad purpose." *Duda v. Bd of Ed. of Franklin Park Public School Dist. No. 84*, 133 F.3d 1054, 1061 (7th Cir. 1998) (citing to the Illinois School Code in effect at that time, the substance of which has not changed). "Nothing in the School Code allows [the Court] to infer that a superintendent or principal has been delegated policymaking authority with respect to personnel decisions." *Duda,* 133 F.3d at 1061; *Horwitz*, 260 F.3d at 619. Similarly, nothing in the Illinois School Code allows the Court to infer that the LSC, or its individual members, have been delegated policy making authority with respect to personnel decisions. *See* 105 ILCS 5/34-1, *et seq*.

In other words, according to the language of the Illinois School Code, the individual LSC members did not have any final policymaking authority with respect to any of the direct racial discrimination plaintiffs allege in the complaint. The individual LSC members did not have final policymaking authority regarding plaintiffs' termination, the denial of summer employment positions and after-school employment assignments, or the alleged unfavorable work schedules and unfavorable work conditions imposed on plaintiffs. This Court cannot take plaintiffs' unsupported allegations regarding delegation of the Board of Education's duties to the LSC as true in light of the language in 105 ILCS 5/34-8.1. Accordingly, Counts I and II must be dismissed as to the individual LSC members pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

*III. Conclusion*

In summary, the individual LSC members' amended Rule 12(b)(6) motion to dismiss is granted. Counts I and II of the amended complaint are dismissed as to Emily Ocasio, Lenette Pedraza, Lucy Roman, Jesus Vega, Victor Nunez, Wendy Perez, Mercedes Felis Matos, and Jeanette Albarran.

**ORDERED:** Defendant LSC members' amended Rule 12(b)(6) motion to dismiss [63] is granted. Counts I and II of the amended complaint are dismissed as to defendants Emily Ocasio, Lenette Pedraza, Lucy Roman, Jesus Vega, Victor Nunez, Wendy Perez, Mercedes Felis Matos, and Jeanette Albarran. The individuals LSC members are terminated as defendants.

**ENTERED**: _____
George W. Lindberg
Senior U.S. District Court Judge

Dated:  June 27, 2012